# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARGARET ANN F.,[1] ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, ) <br> **Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) <br> _____ ) | **CIVIL ACTION** <br><br> **No. 19-1332-JWL** |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) evaluation of Plaintiff's physical impairments, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed an application for SSI and DIB in November 2016. (R. 12, 286-301). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erroneously failed to include any exertional limitation in the residual functional capacity (RFC) assessed.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**II.     Discussion**

Plaintiff argues, "The ALJ's RFC is deficient because it excludes any exertional limitations related to [Plaintiff]'s severe right knee disorder." (Pl. Br. 12). She points out the ALJ found Plaintiff's right knee disorder was one of her severe impairments at the second step of the sequential evaluation process but argues that she "assessed an RFC for 'a full range of work at all exertional levels' and [assessed] no clear limitations related to [Plaintiff]'s admittedly severe impairment." Id. (quoting R. 17). She cites to record evidence which supports the ALJ's finding her right knee disorder is a severe impairment and suggests that evidence supports greater limitations than assessed. Id. 12-14. She concludes:

4

> The medical evidence during the relevant period includes an approximate two-year history of right knee pain. [Plaintiff] was unable to achieve pain relief with two surgeries and three months of physical therapy. The ALJ was correct to find the evidence supported a finding of severity at step two but erred when assessing no exertional limitations.

(Pl. Br. 14).

Plaintiff recognizes that it is the Commissioner's responsibility to assess a claimant's RFC, she must consider all the evidence and provide a narrative discussion describing how the evidence supports the RFC assessed and citing medical facts and nonmedical evidence supporting the RFC assessed. Id. at 14-15 (citing 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946; Castillo v. Astrue, No. 10–1052–JWL, 2011 WL 13627, at *10–11 (D. Kan. Jan 4, 2011); Thongleuth v. Astrue, No. 10–1101–JWL, 2011 WL 1303374, at *13 (D. Kan. Apr. 4, 2011)). She acknowledges that RFC limitations need not be based on specific statements in the medical opinions or the other medical evidence. Id. at 15 (citing Kern v. Astrue, No. 11-1308-JWL, 2012 WL 4442622 (D. Kan. Sept. 26, 2012)). Plaintiff argues this court's analysis in Fore v. Astrue, No. 12-1048-JWL, 2013 WL 500875 (D. Kan. Feb. 11, 2013), of the issue presented here, is dispositive. Id. at 15.

Plaintiff points out her surgeon, Dr. Figuerres, opined limitations "most consistent with sedentary work," and argues the ALJ erroneously discounted Dr. Figuerres's opinion. Id. at 16. She argues the ALJ mischaracterized the record evidence to find she "participated in physical therapy with improvement noted," and cites record evidence supporting her view. Id. at 16-17 (citing R. 944, 1006, 1007, 1020, 1022, 1031, 1033, 1079). She argues it is improper to rely on the state agency medical consultants', Dr.

Landers's and Dr. Sampat's, opinions because they did not contemplate a medically determinable right knee disorder, and certainly not a severe right knee disorder. (Pl. Br. 17-18). Finally, she argues the ALJ erroneously relied on sporadic performance of activities of daily living to justify assessing no exertional limitations. Id. at 18.

The Commissioner argues the ALJ reasonably accounted for Plaintiff's right knee disorder. (Comm'r Br. 7). He argues that the ALJ appropriately discounted Dr. Figuerres's opinion and even if error, that does not justify remand. Id. at 8. He argues that the ALJ appropriately relied upon Dr. Landers's and Dr. Sampat's opinions to which he accorded great weight because they can be harmonized with the record evidence. Id. at 9. He argues the ALJ's reliance on daily activities included many activities involving more than sitting as alleged by Plaintiff. Id. at 10. He argues the most important principle is that the ALJ's evaluation of the evidence is reasonable and relied upon a thorough consideration of all the record evidence. Id. at 11.

### A. The ALJ's Findings Relevant to this Issue

As Plaintiff suggests, the ALJ found that her right knee disorder is a medically determinable, severe impairment. (R. 14) (finding no. 3). The ALJ found Plaintiff can work at all exertional levels, but found she may not climb ladders, ropes, or scaffolds and should avoid hazards such as unprotected heights and unprotected moving machinery. (R. 17). The ALJ discussed Plaintiff's right knee:

> Regarding her right knee, she stated that she has pain under her kneecap that radiates down her leg into her calf and shin. She described the pain as stabbing and stated that arthroscopic surgery was unsuccessful. She takes hydrocodone "once in a while." She stated that standing and stairs are painful for her. However, she testified that she could stand on her feet for

> three hours at a time on average and on occasion, as much as five hours. She is able to perform all activities of personal care and activities of daily living, such as household chores and preparing simple meals. … She stated that she has KanCare but did not participate in physical therapy because she could not be around people. However, physical therapy records show that she did participate and improvement was noted. In addition, activities such as walking miles doing mushroom hunting and farm work are inconsistent with her stated limitations.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not supported by the objective medical evidence or the claimant's activity levels. For example, the claimant reported significant problems with her right knee, but evidence shows that she performed activities such as feeding the horses, [and] walking eight miles mushroom hunting (Exh. C18F/21, 28; C20F/5 [(R. 934, 941, 1051)]). Other activities [are] documented including mowing, riding a motorcycle, climbing in and out of a tractor, riding her horse, helping her son with farm work, and visiting friends in Topeka (Exh. C18F/30, 31, 34; Exh. C19F/7; Exh. C21F/17, 20 [(R. 943, 944, 947, 1079, 1081)]).

(R. 18).

The ALJ also summarized Plaintiff's treatment for her right knee:

> In February of 2017, the claimant experienced knee pain. Exam findings indicated normal gait but some crepitation of the right knee with some right knee tenderness. Her exam was noted to be dramatic. Her range of motion was 135 degrees bilaterally and normal strength. Alignment was within normal limits. An MRI was performed and was positive for moderate chondromalacia of the patella, subchondral cysts and very small joint effusion (Exh. C11F/22). She underwent an arthroscopy (Exh. C9F). She was assessed with chondromalacia of the patella and tibial plateau with a lateral meniscus tear. During the procedure, the claimant received a lateral meniscectomy, and chondroplasty of the patella and lateral tibial plateau. The claimant participated in physical therapy and was observed to steadily

7

improve (See Exh. C18F/2 [(R. 915)]). She underwent a subsequent debridement of the right knee in January of 2018 due to ongoing symptoms include[ing] mildly decreased extension, tenderness, and mild limp (Exh. C18F/9; C19F/8; C22F/12). With therapy, she tolerated greater activity and demonstrated improved range of motion, decreased need for brace and discontinued use of crutches (Exh. C18F/14, 20 [(R. 927, 933)]). Of note, the claimant reported activities that were not consistent with a disabling knee impairment, for example, she reported that she did a lot the day before including feeding the horses, which resulted in increased pain (Id. at 21 [(R. 934)]). However, she continued to make progress and improved with treatment (Id. at 23; Exh. C19F/29, 32 [(R. 936, 1028, 1031)]). Progress was somewhat slowed by DVT, which was treated and resolved. Notes also reflect that the claimant was stiff and sore after walking eight miles the day prior, mushroom hunting (Exh. C18F/28; C20F/5 [(R. 941, 1051)]). Other activities documented including mowing, riding a motorcycle, climbing in and out of a tractor, [and] riding her horse (Exh. C18F/30, 31; Exh. C19F/7 [(R. 943-44, 1006)]).

(R. 20).

The ALJ accorded little weight to Dr. Figuerres's opinion because it was formed before, and reflected Plaintiff's condition before, her knee surgery; the opinion did not address Plaintiff's anticipated improvement after surgery; Plaintiff participated in physical therapy after surgery and improvement was noted; Plaintiff reported significant activities in the treatment notes; and the opinion is inconsistent with the other medical evidence. (R. 21). The ALJ accorded the opinions of Dr. Landers and Dr. Sampat great weight because they were consistent with and appropriate for Plaintiff's diagnoses; "are consistent with her day to day functioning, performing farming activities, driving, caring for her home and son, and other activities;" and "are supported by and consistent with the overall record." (R. 22).

**B.    Analysis**

Plaintiff does not demonstrate error in the ALJ's reasons for discounting Dr. Figuerres's opinion.  Plaintiff first complains that "[t]he ALJ's characterization of the opinion [as] identifying limitations for only <u>the period immediately preceding the surgery</u> is without merit and unsupported" and is erroneous because Dr. Figuerres had treated her for almost a year before providing the opinion.  (Pl. Br. 16) (emphasis added).  This argument misses two points of the ALJ's reasoning.  The opinion was produced a week before an anticipated surgery and while, if accepted, it might be useful to help an adjudicator evaluating the condition requiring the surgery and the period before the surgery, it <u>cannot</u> illuminate Plaintiff's condition after the surgery and any recovery period.  Moreover, the opinion says nothing regarding the anticipated improvement—which was presumably also a basis for undergoing the ordeal of surgery and recovery.  These are valid bases for the ALJ to discount the opinion.

Plaintiff argues the ALJ's finding Plaintiff participated in physical therapy after the surgery "with improvement noted" (Pl. Br. 16)[2] is a mischaracterization of the evidence and "[m]ore than a preponderance of the evidence demonstrates [Plaintiff] did not materially improve after her second surgery." <u>Id.</u> at 16.  Plaintiff's argument of "[m]ore than a preponderance of the evidence," even if true, is not the evidentiary standard applicable in judicial review of a decision of the Commissioner of Social

---

[2] Plaintiff's Brief cites the administrative record at 10, but that page of the record is the 2nd page of the ALJ's "Notice of Decision" and says nothing about physical therapy or improvement.  (R. 10).  However, the ALJ's evaluation of Dr. Figuerres's opinion and the language quoted by Plaintiff appears at p. 21 of the record which is "Page 10 of 13" of the ALJ's "Decision."  (R. 21).  The court presumes the citation in Plaintiff's Brief is a typographical error.

Security.  See, Bowling, 36 F.3d 431, 434 (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.").  As noted supra at 2, the standard is whether "substantial evidence" supports the Commissioner's decision.

Every citation, save two, to which Plaintiff appeals in support of her "preponderance" argument is a citation to Dr. Figuerres's treatment notes.  At issue here is the ALJ's finding Dr. Figuerres's opinion is not supported by improvement noted from physical therapy.  As will be discussed hereinafter, the ALJ's evaluation relied upon all the relevant evidence, not merely Dr. Figuerres's treatment notes.  Plaintiff's two exceptional citations were to physical therapy notes, the first note was dated February 28, 2018[3] and stated, "Cl[ien]t was frustrated," and "is struggling worse financially as ex does not have to pay child support again until August.  She had poor distress tolerance before but is now unable to move around and is feeling trapped."  (R. 1079).  The other physical therapy treatment note cited, was Plaintiff's treatment note, dated May 9, 2018.[4] (R. 944).  As Plaintiff's Brief suggests, the treatment note states:

> P[atien]t nearly 15 minutes late for appt.  States she shouldn't have even came. [sic]  Reports therapy is not helping.  Rates pain 8-9/10.  Does not know why.  PT states she just wants to come to therapy if [she] gets TENS and ice.  States exercises are not helping.  Reports swelling continues to be

---

[3] Plaintiff cites this treatment as being in March 2018 (Pl. Br. 17), but the record cited is dated "02/28/2018."  (R. 1079).
[4] Plaintiff asserts this was "her last physical therapy session in April 2018" (Pl. Br. 17), but the record cited states, "Date of Service 050918."  (R. 944).

>an issue. Reports it is clicking a lot. States she climbed in & out of tractor yesterday & has difficulty riding her horse.

(R. 944). The note also states:

>Questionable compliance with HEP [(home exercise program)]. Limited by pain & effort in therapy. Explained to PT that swelling after surgery is not uncommon & [she] needs to consistently ice to aid with edema. PT intermittent with attendance & effort in therapy.

Id. The first physical therapy note cited by Plaintiff is at best confusing, suggesting financial stress, and it is unclear whether the reference to being unable to move around and feeling trapped refers to being financially trapped, physically trapped, or trapped by stress with few apparent options, or an inability to move around physically. Although Plaintiff had recently undergone surgery on her knee there is no indication in the record she was unable to get around physically—at least with minimal weightbearing, using crutches, and a knee brace. Moreover, the primary subject matter of the "Rehabilitation Services Progress Note" at issue is Plaintiff's financial status. The second note cited is only supportive of Plaintiff's argument to the extent it contains Plaintiff's assertion that therapy was not helping. Neither note compels a finding contrary to the ALJ's finding, especially when considered in light of the ALJ's evaluation of Plaintiff's physical therapy and Dr Figuerres's opinion.

The court quoted the ALJ's evaluation of Plaintiff's treatment (R. 20) supra at 7-8. The record supports the ALJ's finding of improvement with physical therapy. (R. 915 ("Pt has continued to improve steadily with therapy."), 933 ("PT no longer wearing long leg brace and is in a breg knee brace. PT not amb[ulating] with crutches."), 936 ("well

11

with therapy. Her flexion has improved"), 1028 ("Status is: improving."), 1031 ("Status is: improving.").

Plaintiff's argument that it is improper to rely on Dr. Landers's and Dr. Sampat's, opinions because they did not contemplate her right knee disorder (Pl. Br. 17-18), is without merit. To be sure, Plaintiff was having no documented problems with her right knee when Dr. Landers provided her opinion on February 1, 2017. (R. 130). However, Dr. Sampat's review on reconsideration, dated June 27, 2017, included consideration of her treatment for her right knee beginning from her report of chronic right knee pain on January 24, 2017 through her first surgery on March 9, 2017 and her post-operative evaluation on April 21, 2017. (R. 175). Dr. Sampat summarized Plaintiff's post-operative evaluation:

> R knee arthroscopy. post-op right knee Status is: improving. Pain level is: 5/10. WB [weightbearing] status: full. No calf tenderness. No fever/chills. No rehabilitation. Home exercise. Not using assistive device. Other: Portals healing well. OE: gait is nl. exam nl. R knee strength is nl. BMI 26.54

(R. 175). He concluded, "R[ight] knee will improve by the duration. Initial decision is supported by MER [(medical evidence of record)] and is affirmed." Id. This is evidence upon which it is proper for the ALJ to rely. Moreover, The ALJ did not merely adopt Dr. Landers's and Dr. Sampat's opinions, she considered all of the relevant record evidence as discussed above, assessed her own RFC, and explained her reasons for doing so.

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the

ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing Social Security Ruling (SSR) 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. §§ 404.1545(a), 416.945(a).  Moreover, the final responsibility for determining RFC rests with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

      Plaintiff's argument the ALJ erred in discounting both Dr. Figuerres's opinion and Plaintiff's allegations of disabling symptoms because she erroneously relied on sporadic performance of activities of daily living to justify assessing no exertional limitations, fares no better.  Plaintiff is correct that the Tenth Circuit finds the sporadic performance of activities of daily living does not establish capability for substantial gainful activity or justify discounting a claimant's allegations of symptoms.  Frey v. Bowen, 816 F.2d 508, 516-517 (10th Cir. 1987); Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir.1984); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir.1983).  Even assuming, without deciding, the same principle should be extended to consideration of a physician's opined limitations, the court finds that the daily activities at issue here are pointedly inconsistent with both Plaintiff's allegations and Dr. Figuerres's opinion.

      Plaintiff alleges she is limited to sedentary work and Dr. Figuerres opined limitations consistent with sedentary work.  Plaintiff argues that all the activities at issue "but mowing the lawn are activities [Plaintiff] completed sitting.  She and Dr. Figuerres

did not assess significant limitations with her ability to sit." (Pl. Br. 18). Plaintiff's assertion, however is incorrect. As the Commissioner argues, "It defies logic to assume that riding a motorcycle or horse as well as climbing in and out of a tractor are activities that do not require a great degree of physical activity beyond sitting." (Comm'r Br 10). The consideration at issue here is Plaintiff's ability to use her right knee, and the activities highlighted by the ALJ involved using her knee—feeding the horses, mowing, riding a motorcycle, climbing in and out of a tractor, riding her horse, and helping her son with farm work. (R. 18). The record confirms Plaintiff reported these activities to her healthcare providers. (R. 934 ("she did a lot yesterday, including feeding horses."), 943 ("PT reports mowing on Thursday and over the weekend, as well as riding a motorcycle."), 944 ("States she climbed in & out of tractor yesterday & has difficulty riding her horse")). Moreover, late in the period at issue here, on April 30, 2018, Plaintiff reported that the day before she had walked <u>eight miles</u> mushroom hunting. (R. 941). These activities reveal a capability for use of her right knee much greater than either Plaintiff or Dr. Figuerres suggested.

Plaintiff is correct that the ALJ did not assess any exertional limitation, but she did assess limitations which are at least arguably related to her right knee disorder—"no climbing of ladders, ropes, or scaffolds;" and "avoid hazards such as unprotected heights and unprotected moving machinery." While the hazard limitations no doubt primarily relate to Plaintiff's seizure disorder, the limitations also relate to use of her right knee.

Plaintiff argues that because the ALJ found she has a severe right knee disorder she should also have found some exertional limitation. However, a severe impairment is

an impairment that significantly limits a claimant's ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  Basic work activities which might be limited in exertion are "Physical functions such as walking, standing, sitting, lifting, pushing, pulling, … [or] carrying."  Id. §§ 404.1522(b)(1), 416.922(b)(1).  A severe impairment has more than a minimal effect on the ability to perform basic work activities, Williams, 844 F.2d at 751, but it does not necessarily have a large effect.  The mere presence of evidence supporting a severity finding does not require greater limitations than assessed here.  Plaintiff argues the effect is greater than the ALJ accounted for, but her argument relies upon her own statements and the opinion of Dr. Figuerres, both of which the ALJ discounted and the court has determined substantial record evidence supports those determinations.

Plaintiff's appeal to this court's decision in Fore supports rather than detracts from the ALJ's decision.  As Plaintiff argues, this court in Fore rejected an argument similar to that present here for reasons similar to those relied upon here:

> [T]he ALJ acknowledged and summarized the evidence regarding Plaintiff's back pain, obesity, and degenerative disc disease.  Plaintiff points to no evidence which was ignored or which requires the assessment of additional exertional limitations.  The mere presence of these impairments does not require a finding of exertional limitations.  The court recognizes that there are people with back pain, obesity, and/or degenerative disc disease who suffer from exertional limitations as a result of one or more of those impairments.  However, other than Plaintiff's testimony, which the ALJ found not credible, the record in this case is devoid of evidence of specific exertional limitations caused by those impairments.  Moreover, the ALJ explained his rationale for assessing particular physical limitations, he cited to record evidence in support of his assessment, and the court finds substantial record evidence supports that RFC assessment.

Fore, 2013 WL 500875, at *11.  Plaintiff claims Fore is distinguishable because the record here contains treatment notes from physical therapy sessions and from Dr.

Figuerres which demonstrate Plaintiff "did not materially improve after her second surgery to the extent no exertional limitations were justified." (Pl. Br. 17).  However, although the record here includes both Plaintiff's testimony and Dr. Figuerres's opinion tending to support a finding of disability, as the court discussed above the ALJ discounted both of these, and the court has determined substantial record evidence supports those determinations.

Substantial record evidence supports the ALJ's finding in this case.  Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).

Plaintiff has shown no error in the ALJ's decision and no record evidence which compels a different result than her decision in this case.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated September 14, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**
17